Good morning, your honors. My name is Andres Guevara. I'm CJA counsel appointed to represent Mr. Garring Jackson in this appeal. Essentially, this case comes down to probable cause. The officers at the Denver Police Office were doing a buy and bust operation at the 2200 block of Lawrence, which is close to where we are right now, when they saw a CI approach another individual, not Mr. Jackson, another individual named Mr. Tindall. Now, stepping back, Detective Goss, who's the primary detective in this case, had done kind of a pre-buy surveillance. I'm going to pull the mic up closer to you. There you go. Sorry, your honor. Had done a pre-operation surveillance of the area. And as he was going through the area, he was looking around and he noticed one person that he said stood out to him. That person ended up being Mr. Jackson. What noticed, what kind of sprung to mind was is he was healthy and that he had very bright white shoes. And well-dressed. Yes, especially considering the other people in that area, right? And that's over by the Denver Rescue Mission, so... Know it well. We are familiar. Very familiar. So he stood out to them, but he wasn't engaged otherwise in any other criminal activity. He was merely standing in that area. He then does a couple of surveillances, I think about three, but nothing actually changes. Mr. Jackson is just standing there. He gets into an observation post, which is basically in his car, about a block away. And at the hearing, there were some photographs showing what that distance was and what his observation was. The CI approaches Mr. Tindall, engages in a conversation with Mr. Tindall for seconds. And then after that conversation, the two of them walk over to where Mr. Jackson is. There's another brief seconds-long conversation. And then the CI and Mr. Tindall walk back. The detective doesn't see any hand-to-hand transaction specifically, but then the CI leaves and gives a notice that there had been a purchase and says he had purchased from Mr. Tindall. Later on, after the arrest, there's a statement written by the CI in which the CI confirms that the person who sold him the narcotics in this case was this other person, Mr. Tindall. And then he writes a notation, the CI, at the bottom of that report that says that the other person in black that's referred to as Mr. Jackson was just standing there at the time. So when the officers approach Mr. Jackson... There's a fact missing, though, isn't there, that after the CI walked away, Mr. Jackson and the person who sold the narcotics conferenced, for lack of a better term? Yeah, they did. And actually, after the CI leaves the scene, Mr. Tindall then, after some... It's unclear as to how many seconds, but goes over to where Mr. Jackson are. They talk. And that's the only time that the detective sees anything that's a kind of an exchange or something. There's some kind of exchange that goes on, but he doesn't say what it is that he sees. He just can't see what it is. Then Detective Goss puts on the call to basically hold everyone in place, and officers then arrive in uniform at the location. When they get to the location, there's a video which shows that one of the officers seizes, grabs Mr. Jackson momentarily, because then after a few seconds, Mr. Jackson flees. I think he told him something to the effect that he wasn't going anywhere, too, right? Yes. Right. And so he has physical control of him. He then says, you're not going anywhere. And I think it's about four or five seconds. I think that's the government's brief, mentions four or five seconds. And in the order from the court, it's the district court's rule, it's just more seconds. It's momentary. But then Mr. Jackson flees. Then there's some kind of struggle between Mr. Jackson and the officer who's trying to detain him, and that's where the firearm falls out. Mr. Jackson is able to flee temporarily, and then he's eventually stopped. When he's stopped, there's in his possession narcotics and also pre-recorded buy money that was used by the CI to purchase the drugs for Mr. Tindall. So obviously the argument in retrospect is, well, surely that means that Mr. Jackson was definitely involved because the pre-recorded buy money went through from CI to Mr. Tindall to Mr. Jackson. However, we're looking at what information was contained and where the officers had probable cause prior to knowing, obviously, about the pre-recorded buy money. Because obviously in retrospect... And so that's the issue. Did they have probable cause? And if not, why not? Exactly. That is the issue. There is an abandonment component to this where the district court ruled that there was abandonment of the firearm, but it's a subsidiary argument to probable cause. This really is, if the court finds that there was probable cause to arrest Mr. Jackson, then the abandonment issue doesn't matter. I agree that if they have probable cause to arrest Mr. Jackson, inevitably they would have found the firearm. It would have been search incident to an arrest. So the issue then is whether or not probable cause existed. The district court found obviously that it did, and Mr. Jackson disagrees. Citing the cases that we had cited in our brief, we point to the fact that at least objectively, prior to when the officers approached Mr. Jackson, what he was doing was standing around. Standing around, you say? That's what he was doing, was standing around? Yes. And then at one point, conversing with the CI and Mr. Tindall. How long after the conversation with the CI and Mr. Tindall did the cops approach your client? It's not very long. There's nothing in the record as to time, but I can tell the court this all happened fairly quickly. The detective, I believe, testified that after he got the signal from the CI, so he waited for sufficient time for the CI to leave so that it wasn't obvious that the CI was giving the notice. He then immediately called for the officers to get onto the location. And then at some point around that time, he sees Mr. Jackson and Mr. Tindall have that conversation and exchange. But it's all happening very quickly, so we're not talking about the passage of, say, 20 minutes or I don't even think it's 10 minutes. It's very brief where all this is happening. I mean, isn't the huddle up between the CI, Mr. Tindall, and Mr. Jackson, and then the signal that, hey, I've bought some even though he said, hey, Mr. Tindall was the person who I exchanged with, isn't that pretty strong evidence that Mr. Jackson was involved in the transaction? Because after they do that, then they huddle up again? Well, it's definitely suspicious, right? And so I understand if the officers, if Detective Gosset felt suspicious about the conduct. The question is, is it probable cause? Does that allow the officer to go ahead and arrest Mr. Jackson? Well, the whole purpose of having the CI on the scene was to attempt to buy drugs. Correct. And when that was achieved, he gave the signal, I have bought drugs. Yes. Do we have probable cause then, just in that very summary description? As it relates to Tindall, yes. So we take Jackson out of the picture, even though he's in the picture. And can't we look at totality of the circumstances? You can, but it's still individually, it would not, for example, have given probable cause to have arrested everyone in that location. There was some discussion in the motions hearing because there was issues as to who was radioed in to stop. And I think Detective Gosset's radio call was stop everybody, to basically hold everyone in place. So now I understand if Detective Gosset and the officers said, look, we're going to do maybe some Terry stops as to some other people, investigative stop and ask some questions. It would have been inappropriate and illegal to have said, everyone there, we're just going to just arrest everybody, put them in the paddy wagon and we'll figure it out later. I agree. There was probable cause to arrest Tindall because Tindall had the conversation with the CI and the CI noted that the purchase was done from Tindall. There were conversations. That's pretty clear cut. But didn't they see Mr. Tindall go back and confer with Mr. Jackson? And it looked like they did something together. That's correct. And that's exactly right. And doesn't that give them at least enough to say, we'd like to talk to you a little bit more, just wait here. They could have done a, there could have been a better argument for a Terry stop. This was not a Terry stop as it related to Mr. Jackson. He put his hand on his arm and said, don't go anywhere. And the guys took off. Agreed. After a moment, yes. How does flight fit into that picture? In terms of whether or not... What does that add to the calculus? Well, I think that... You're not claiming he was arrested with the man put his hand on his arm and said, you're not going anywhere. He was seized at that point. And he had given himself up to the seizure. So it was... He gave himself up to the seizure? Yes. Because all it takes is a momentary. And in fact, it's in the government's brief, which is the Mosley case that they cite. Because that's a case in which the defendant, they order the defendant in the car to basically get out of the car. And the defendant during that time is ignoring the orders and trying to hide something. And the court there in this circuit said, you have to have a seizure. It can be momentary. But for the Fourth Amendment to Kincaid, there has to be some kind of seizure before you can then argue that you've been seized. If the officer had not grabbed Mr. Jackson. So for example, if the officer had approached Mr. Jackson and said, you're not going anywhere, and Mr. Jackson had run, there wouldn't have been a seizure. But that momentary grab is enough. So the seizure happened at that point. And he had been seized for purposes of Fourth Amendment. Let me change the facts on you slightly. Say that the officer observed Mr. Tyndall and the CI doing a deal. And that Mr. Jackson was not there when that was all occurring. And Mr. Tyndall or the CI walks off, gives the signal that he just purchased drugs from Mr. Tyndall. Then Mr. Tyndall goes over and appears to make an exchange with Mr. Jackson, who in my hypothetical has just walked up. Right. And Mr. Jackson, and they appear to make an exchange. At that point, don't the police have probable cause to believe that there was a drug transaction there as well? In terms of being able to arrest Mr. Tyndall as a seller or Mr. Jackson? We're talking about Mr. Jackson. I mean, it appeared that Mr. Jackson, from that hypothetical, that Mr. Jackson was engaged in does not have to be the same activity as Mr. Tyndall. It's always facts and circumstances. So you look at each fact. One of the reasons we give district courts the deference, they hear facts. But in that situation, an exchange by itself is not an indication of criminal activity. Okay. So, I mean, that's not an exchange by itself. That's an exchange happening just moments after a confirmed buy. In a high crime and drug area, right? Yes. But still, it's not an indication of criminal activity by itself. So just like mere presence isn't by itself an indication of criminal activity, people can make exchanges, even if they're in a quote, high drug environment, that don't rise to the level of probable cause to stop people. True, but doesn't Mr. Jackson have to, in my hypothetical, wouldn't Mr. Jackson have to live with what the police just observed Mr. Tyndall doing? In other words, kind of like a strict liability? No, not strict liability, but I mean, it adds to the totality of what they're considering. Well, it can still be considered for certain levels of interactions with the officers, right? So there's always the availability of doing a Terry stop. You can do an investigative stop to get information. The question is, can you raise it up to the level, the highest level possible, which is to seize and arrest? And that's what the officers chose to do with regards to Mr. Jackson. So in your hypothetical situation, what I would propose is, if you're not sure, investigate further. Get some more information before you arrest or seize Mr. Jackson. Was Mr. Tyndall seized or arrested? Mr. Tyndall? Mr. Tyndall was both seized and arrested, yes. And he was placed in handcuffs, and that's in the record. I believe that the video shows that actually happening at the time Mr. Jackson runs off. And I have a brief amount of time, just real quickly, as it relates to abandonment here. Our only issue is essentially there's no findings of fact that Mr. Jackson voluntarily abandoned it. It appears that the record, if anything, has suggested that it fell out as a result of the scuffle. I have about 18 seconds left, if I can reserve that for rebuttal. Sure, thank you. Good morning, and may it please the Court, I'm Carl Schock. I represent the United States. There was probable cause in this case, because Detective Goss personally observed what he knew and understood, based not only on common sense, but on his training and experience, to be a drug deal involving the defendant. The defendant wasn't just there, like all of the spectators. The objective facts supported the conclusion that he was actually involved. Here's what Detective Goss personally observed. He saw a confidential informant who was specifically engaged by law enforcement to purchase drugs walk over to a man in a brown jacket to make that purchase. Then a few seconds later, those two men walked over to the defendant, and all three men huddled closely together and interacted with one another for a few moments. Then after that interaction, the CI walked away and signaled that he had just purchased drugs, telling another detective that he had purchased crack cocaine from the man in the brown jacket who had led him to the defendant. Then, after the CI walked away, the man in the brown jacket walked back over to the defendant and handed him something. The detective didn't actually see the drugs and money exchange hands, but he saw everything but. And given the totality of the circumstances, it was clear what had just happened. And regardless of who actually handed the drugs to the CI, it was at least a more than reasonable inference that those two men were working together. Probable cause, of course, is a common sense standard, and common sense here supports the conclusion that the defendant had participated in that drug deal. Now, there was other circumstantial evidence here that I think further adds to the probable cause analysis, including, of course, that this was effectively an open-air drug market, including the detective's experience that this is exactly the way these kind of drug deals occur in that area, with a drug dealer using one of the typical population there to actually deliver the drugs. The fact that the defendant stood out, all of that can play into the analysis, but we don't even need any of that because the officer here personally observed what had happened. There's a lot of talk from the defendant about him merely being in proximity to the situation, and of course that's not the case here. Certainly it wouldn't have been appropriate to arrest every single person who was standing on that block. Nobody's arguing that. Only two people actually interacted with the CI when the detective at the time knew that there was a drug purchase being made. So the defendant was in a much different situation than everybody else on that block. As to the other point that the defendant makes about the fact that the CI only mentioned, at least in the initial conversation, only mentioned the man in the brown jacket, that's because that's the man who handed him the drugs, according to the CI. But probable cause, of course, isn't limited to that person, and regardless of what the CI said, the detective actually saw another person involved, so it wasn't limited to simply relying on the CI. Regarding the seizure of the gun, the defendant has said here that if there was probable cause, then this separate issue doesn't matter, because at a minimum there would have been enough for a search, isn't it, to arrest. And I agree with that, but I do just want to make two additional points on the abandonment issue. The first is that the district court's finding here wasn't clearly erroneous. It's reviewed for clear error. That is supported by the record, and the way that's supported by the record is not that he intentionally dropped the gun, but that he intentionally left the gun there after it dropped. And the facts in the record to support that are that the video of the incident shows that when the gun fell to the ground, one of the officers yelled that there was a gun, and then the defendant ran away. Now, we could argue about factually whether, in fact, he intended to leave it there, but there's certainly enough there to support the district court's finding. So objectively, you can look at it objectively. We don't care about the subjective intent of the defendant. I think we do need the subjective intent of the defendant, but I think what we have here is we have a finding by the district court that the defendant voluntarily intended to leave it there. How do we get to that, that the defendant voluntarily intended to leave it there? So we have a finding by the district court that he intentionally abandoned it there, and the question we have is, is that clear error? Are there facts in the record to support that finding? And the facts we have to support that finding is the video itself, as well as the district court's summary of that video. So if a gun falls out of your jacket as you're running away, that's a voluntary abandonment? If you continue running, I think it is. But I think the second point I want to make here, and this is an important point, is the district court focused on abandonment. But it doesn't matter whether the defendant intentionally left it there or not, because at that point, the gun was exposed in plain view in the middle of downtown Denver with a bunch of spectators around. And so at that point, nothing prevented the officers from picking that gun up, whether that's to protect the public safety, whether that's because it's contraband, having been possessed in connection with a drug deal. So the Supreme Court has said that weapons and contraband in a public place can be seized. That's certainly true. Certainly officers weren't required to leave it there and go see if the defendant meant to leave it there. That is my argument, unless the court has any further questions. The government requests that this court affirm the district court order denying the motion to suppress. Thank you, counsel. If on my way here I'm running to the court and my phone were to drop out of my pocket, land on the floor, but I keep running, I have not voluntarily abandoned my phone. Because you didn't know you dropped it. Unless I did know. If you heard it clunk, would that be? That might help, but there's no evidence in the record that Mr. Jackson knew that his gun had fallen out. So I don't think the record is complete on that issue.